IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02290-WYD-CBS

ANDREW WOLTERS,
    Plaintiff,
v.

ALEX HUNTER, Boulder District Attorney, and
TOM WICKMAN, Boulder Police Detective,
    Defendants.
_____

RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on "Defendants' Joint Motion to Dismiss" (filed March 3, 2008) (doc. # 33). Pursuant to the Order of Reference dated February 13, 2008 (doc. # 26) and the memorandum dated March 4, 2008 (doc. # 35), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Wolters' Response (filed April 21, 2008) (doc. # 43), the pleadings, the entire case file and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Mr. Wolters is currently incarcerated at the United States Penitentiary ("USP") Big Sandy in Inez, Kentucky, serving a 610-month sentence for a conviction in the Central District of California. On July 1, 1997, Mr. Wolters was convicted after a jury trial of three counts of bank robbery in violation of 18 U.S.C. § 2113(a), two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d), and three counts of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 9249c). *See United States v. Wolters*, 48 Fed. Appx. 258 (9th Cir. Oct. 15, 2002). Special Agent ("SA") John MacDonald of the Federal Bureau of Investigation ("FBI") was one of the law enforcement officers who investigated Mr. Wolters and testified at Mr. Wolters' trial.

1

Mr. Wolters alleges that he has information that SA MacDonald was "directly involved in the murder of Jon-Benet Ramsey" in Boulder, Colorado on December 24, 1996 and that SA MacDonald framed him for the bank robberies in California and threatened to kill him in order to suppress the information about the murder. (*See* doc. # 19 at pp. 3-4 of 9).

Proceeding *in forma pauperis* and in his *pro se* capacity, Mr. Wolters brings one claim pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against Defendants Alex Hunter, a former District Attorney for Boulder County, and Tom Wickman, a former detective for the City of Boulder Police Department.[1] (*See* Amended Prisoner Complaint (doc. # 19) at p. 3 of 9). Mr. Wolters alleges that

> Both defendants received numerous phone calls and letters from Plaintiff concerning a murder in Dec. '96 in Boulder Colorado. Both defendants knowingly conspired to withhold evidence of communication between Plaintiff and Defendants for the past 10 ½ years. Both defendants maliciously withheld this evidence knowing full well that Plaintiff needed evidence to support claim that he (Plaintiff) had accused federal agent, John Charlie McDonald Sr. of being directly involved in the murder of Jon-Benet Ramsey which was McDonald's motive to frame Plaintiff for a crime, provide perjured testimony to a grand jury and trial jury, and to alter some evidence and destroy other evidence.

(*See* doc. # 19 at p. 3 of 9). Mr. Wolters alleges that he "made numerous phone calls" and "sent well over one hundred letters" to Defendants regarding SA MacDonald's involvement in the JonBenet Ramsey murder "from late Jan. '97 to sometime in mid June '06 . . . for more than ten (10) years." (*See* doc. # 19 at pp. 4-5 of 9). Mr. Wolters alleges that Defendants made "false statements" in reporting his phone calls and letters to Bureau of Prisons officials. (*See id.* at p. 5). Mr. Wolters claims that Defendants conspired to violate his constitutional right to due process by depriving him of evidence that SA MacDonald framed him for the bank robberies. (*See* doc. # 19 at p. 3 of 9;

---

[1] Defendant Hunter's term as District Attorney ended January 8, 2001. Defendant Wickman left his employment with the City of Boulder Police Department on March 17, 2003.

Response (doc. # 43) at p. 2 of 6).

Mr. Wolters initially claimed that Defendants conspired to violate his right to be free from cruel and unusual punishment by causing him to be subjected to prison abuse. (*See* doc. # 19 at pp. 4-5 of 9). Mr. Wolters has since clarified that he "does not wish to raise that Defendants were linked to the prison abuse." (*See* Response (doc. # 43) at p. 3 of 6). As relief, Mr. Wolters seeks, *inter alia*, injunctive relief including release from custody, compensatory, punitive, and nominal damages, costs and fees. (*See* doc. # 19 at p. 9 of 9). Mr. Wolters has also clarified that he is not challenging "the validity of his conviction and confinement . . . in this court." (*See* Response (doc. # 43) at p. 2 of 6).

In *Bivens*, the Supreme Court recognized "an implied private right of action for damages against *federal officers* alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001) (emphasis added). As Mr. Wolters' claim is based on the alleged conduct of Defendant Hunter, a former District Attorney for Boulder County, and Defendant Wickman, a former detective for the City of Boulder Police Department, and not against any federal officers, it is more appropriately brought under 42 U.S.C. § 1983.

II.     Standard of Review

Defendants move pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the Amended Prisoner Complaint. Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame

"a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Because Mr. Wolters appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III. Analysis

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights

secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [Southern Disposal] must allege both the deprivation of a federal right and that the alleged action was taken under color of state law") (internal quotation marks and citation omitted).  Mr. Wolters claims that Defendants conspired to violate his constitutional right to due process by depriving him of evidence about SA MacDonald's involvement in the JonBenet Ramsey murder.

A.     Liability of Defendants in their Official Capacities

Defendants assert that they are entitled to Eleventh Amendment immunity.  Mr. Wolters does not indicate whether he is suing Defendants in their individual capacities, their official capacities, or both.  (*See* doc. # 19; *see also* doc. # 43 at p. 4 of 6 ("whether defendants were acting in their official or personal capacity is not an issue that Plaintiff is familiar with.  Plaintiff only spoke to and wrote to the named defendants while they were active public officials.")).

To the extent that Mr. Wolters is suing Defendants in their official capacities, he is actually attempting to impose liability on their employers.  "The district attorney is a state public officer."  *Tisdel v. Bd. County Comm'rs*, 621 P.2d 1357, 1361 (Colo.1980).  *See also* Colo. Rev. Stat. § 20-1-101.  Thus, this action is barred by the Eleventh Amendment as it may pertain to Defendant Hunter in his official capacity.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding a state officer is considered a state office or agency under the Eleventh Amendment when sued in his official capacity).  "[A]bsent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and

their agencies." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir.1994), *overruled on other grounds, Ellis v. Univ. Kan. Med. Ctr.*, 163 F.3d 1186, 1194-95 (10th Cir. 1998). Here, the State of Colorado has not waived its Eleventh Amendment immunity and congressional enactment of § 1983 did not abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979).

To the extent that Mr. Wolters sues Defendant Wickman in his official capacity as an employee of the City of Boulder Police Department, Defendant Wickman is not protected by Eleventh Amendment immunity. *See, e.g., Thomas v. St. Louis Bd. of Police Commrs.*, 447 F.3d 1082 (8th Cir. 2006) (holding that the Eleventh Amendment does not shield the St. Louis Police Department, or its officers, from an arrestee's § 1983 claim, because a municipal police department is not an arm-of-the-State); *Mickle v. Ahmed*, 444 F. Supp. 2d 601 (D.S.C. 2006) ("A municipal police officer does not qualify for Eleventh Amendment immunity") (citation omitted); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003) (Baltimore Police Department not entitled to Eleventh Amendment immunity and is thus subject to suit under § 1983); *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) (municipal police department is not a suable entity because it lacks a legal identity apart from the municipality).

Nevertheless, Mr. Wolters has not stated a claim against Defendant Wickman's employer. "Municipalities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights." *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1177 (10th Cir. 2003) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 689-90 (1978) (holding that municipalities and other local governmental bodies are "persons" within the meaning of 42 U.S.C. § 1983)). "A municipality, however, cannot be held liable for the actions of its employees under the theory of *respondeat superior*." *Marshall*, 345 F.3d at 1177 (citation omitted). *See also Lopez v. LeMaster*, 172 F.3d 756, 762-63 (10th Cir. 1999) ("The County may be held

liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees.") (internal quotation marks and citation omitted).

"Plaintiffs seeking to impose liability on a municipality under section 1983 must identify a municipal 'policy' or 'custom' causing their injury." *Marshall*, 345 F.3d at 1177 (citation omitted). *See also Bryan County v. Brown*, 520 U.S. 397, 403 (1997) ("we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.") (citations omitted).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404.

"An unconstitutional deprivation is caused by a municipal 'policy' if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself." *Marshall*, 345 F.3d at 1177 (citation omitted). To warrant liability, the alleged policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the public entity's officers. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (internal quotation marks and citation omitted). A decision that "was a course of action consciously chosen from among various alternatives " generally implies a policy. *J.B. v. Washington County*, 127 F.3d 919, 924 (10th Cir. 1997) (internal quotation marks and citation omitted).

"If a violation cannot be characterized as official policy, then [a municipality may] still be held liable if the practice is so permanent and well-settled as to constitute a custom or usage with the force of law." *Lankford*, 73 F.3d at 286 (internal quotation marks and citations omitted). *See also Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir. 2001) ("a municipality may be held liable when the illegal practice

is so permanent and well settled as to constitute a custom or usage with the force of law") (internal quotation marks and citation omitted). " '[C]ustom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Marshall*, 345 F.3d at 1177 (citation omitted).

Mr. Wolters has not alleged any unconstitutional policy or custom attributable to a municipal policymaker. In the absence of allegations of policy or custom, Mr. Wolters fails to state a claim for municipal liability. *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir.1998) (requiring proof that policy or custom is the moving force behind governmental employee's constitutional violation); *Chin*, 241 F. Supp. 2d at 549 (complaint fails to state a claim because the plaintiffs "have not alleged sufficient facts to establish that the search . . . was the result of a custom or policy of the Baltimore Police Department"). To the extent Mr. Wolters makes a claim against Defendant Wickman in his official capacity, such claim is not sufficient to progress past the pleading stage.

B. Liability of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against Defendants in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Wolters is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67.

1. Conspiracy Claim

Mr. Wolters alleges that Defendants conspired to violate his due process rights.

"By a § 1983 conspiracy claim," the Tenth Circuit "mean[s] a conspiracy to violate a right protected by § 1983; in other words, a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990) (citations omitted). "[I]n order to survive a motion to dismiss [a § 1983 claim alleging a conspiracy], the complaint must contain more than mere conclusory allegations." *Querry v. Messar*, 14 F. Supp. 2d 437, 452-53 (S.D.N.Y. 1998) (internal quotation marks and citation omitted). "This means that the plaintiff should make an effort to provide some details of time and place and the alleged effect of the conspiracy." *Id.* See also *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (for § 1983 conspiracy claim, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants) (citation omitted); *Stern v. Sommerville Communications Corp.*, 529 F. Supp. 29, 30 (D.C. Mich. 1981) ("in order to withstand a motion to dismiss, conclusory allegations of conspiracy under 42 U.S.C. § 1983 will not suffice; the plaintiff must allege material facts showing the existence and scope of the conspiracy." (citations omitted). "[C]onclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (quoting *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo.1998)).

> Mr. Wolters claims a conspiracy based on his allegation that
>
> From late Jan. '97 to sometime mid June '06 Plaintiff as well as five different attorneys called both defendants trying to obtain evidence or information that plaintiff had spoke to them prior to late Jan '97. Both defendants had deliberately withheld evidence of communication needed to support claims of government misconduct in a criminal case.

(*See* doc. # 19 at p. 4-5 of 9). Mr. Wolters' allegations are insufficient to state a claim that Defendants conspired to violate his constitutional right to due process. Mr. Wolters has not alleged an understanding, an agreement, or concerted action necessary to

9

establish the Defendants' participation in a conspiracy.  Mr. Wolters does not particularize the date or time of the alleged conspiracy, the objective of the conspiracy, or the Defendants' specific conduct in the conspiracy.  *See Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (upholding dismissal of an amended complaint that failed to provide factual averments as to the nature of the alleged conspiracy or the defendant's role in the alleged activities);  *Alfaro v. E.F. Hutton & Co., Inc.*, 606 F. Supp. 1100, 1117 (E.D. Pa. 1985) (holding that a general conspiracy allegation without a statement of facts is insufficient to state a cause of action).  "A vague and conclusory allegation that a conspiracy existed is not sufficient to state a claim; a complaint must contain factual allegations suggesting that defendants reached a meeting of the minds."  *Prince v. Campbell*, 314 F. Supp. 2d 793, 795 (N.D. Ill. 2004) (citing *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999) (dismissing a conspiracy charge where the complaint included only a bare allegation and failed to specify how or when the Defendants allegedly reached an agreement, its terms, or its scope).  *See also Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir.) (because "a bare claim of conspiracy" is unenlightening, a claim of civil conspiracy does require allegations as to the parties, the purpose, and approximate date of the conspiracy), *cert. denied*, 548 U.S. 907 (2006).  Mr. Wolters' conspiracy claim is properly dismissed for failure to state a claim upon which relief can be granted.

    2.    Statute of Limitations

Defendants argue that Mr. Wolters' claim is barred by the statute of limitations.  Federal courts must look to the applicable state statute of limitations to determine the timeliness of a claim under § 1983.  *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993).  Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983.  *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year

limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim).

The determination of when a § 1983 action accrues is controlled by federal rather than state law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action." *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993). It is undisputed that Mr. Wolters filed the initial Prisoner Complaint on or about October 22, 2008. (*See* doc. # 1).[2] Thus, under Colorado's applicable two-year statute of limitations provision, Mr. Wolters' claim is untimely unless it accrued on or after October 22, 2006.

Mr. Wolters alleges that Defendants conspired to violate his right to due process by depriving him of evidence that SA MacDonald framed him for the bank robberies. Mr. Wolters was tried for the bank robberies in 1997. *See United States v. Wolters*, 48 Fed. Appx. at 258. Mr. Wolters alleges conduct that occurred for more than ten years between January 1997 and June 2006, more than two years before he filed this action. At any time after January 1997 Mr. Wolters knew or had reason to know of his claim that Defendants deprived him of evidence about SA MacDonald. Mr. Wolters filed this action more than ten years after he knew or had reason to know of the basis of his claim for violation of due process. Further, Defendant Hunter's term as District Attorney

---

[2]  A prisoner's *pro se* complaint alleging a § 1983 action against state prison officials is treated as filed with the court on the date the prisoner gave it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 271 (1988).

ended January 8, 2001 and Defendant Wickman left his employment with the City of Boulder Police Department on March 17, 2003. Mr. Wolters offers no more than his conclusory argument that "[t]he media reports clearly suggests that defendants were in fact actively involved in the Ramsey murder investigation in 2006 and thus, Plaintiff's claims are not time-barred." (*See* Response (doc. # 43) at p. 4 of 6).

As an affirmative defense, the statute of limitations may be subject to certain defenses such as waiver, estoppel, or equitable tolling. *See Rotella v. Wood*, 528 U.S. 549, 560 (2000) (federal statutes of limitations "are generally subject to equitable principles of tolling"). However equitable tolling is employed as an "exception, not the rule." *Rotella*, 528 U.S. at 561. Mr. Wolters' claim appears to be barred by the statute of limitations, unless Mr. Wolters alleges or shows a basis for tolling the limitations period.

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005) (internal quotation marks and citations omitted). *See also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaint may be dismissed where the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (citation omitted). The issue of tolling, like the statute of limitations, is governed by Colorado state law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995). Under Colorado law, the doctrine of equitable tolling "permits the statute of limitations to be tolled only where the defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner or truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Morrison v. Goff*, 74 P.3d 409, 412-13 (Colo. App.

2003) (citation omitted), *cert. granted in part on other grounds*, Colo. Jul 21, 2003. *See also Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 604-05 (Colo. App. 2000) ("[i]n order for a statute of limitations to be tolled because of equitable considerations, it is the plaintiff's burden to establish that the defendant's actions prevented her from filing a timely claim.") (citation omitted); *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. App. 1991) ("Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled."). Mr. Wolters has not alleged that Defendants acted affirmatively to prevent him from discovering his cause of action and timely filing his claims. The allegations here plainly support dismissal of Mr. Wolters' claim as barred by the statute of limitations.

   3.   Qualified Immunity

Defendants raise the defense of qualified immunity. Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. Initially, the plaintiff must show the [defendant]'s conduct violated a constitutional right: A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant]'s conduct violated a constitutional right?

*Wilder v. Turner*, 490 F.3d at 813 (internal quotation marks and citations omitted). *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.") (citation omitted); *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 745 (10th Cir. 1999) (court "must first determine 'whether the plaintiff has sufficiently alleged that the defendant violated a

13

statutory or constitutional right' . . . If the plaintiff has asserted such a deprivation, *only then* do we inquire 'whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right' ") (citation omitted).

Having concluded above that Mr. Wolters has failed to state a claim that Defendants' conduct violated a constitutional right, "the inquiry ends and the [defendant] is entitled to qualified immunity." *Wilder v. Turner*, 490 F.3d at 813 (citation omitted).

IV. Conclusion

Based on the analysis above, the court need not reach Defendants' arguments pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) and 18 U.S.C. § 3626. Accordingly,

IT IS RECOMMENDED that "Defendants' Joint Motion to Dismiss" (filed March 3, 2008) (doc. # 33) be GRANTED and this civil action be DISMISSED for failure to state a claim upon which relief can be granted. Further,

IT IS ORDERED that:

1. In light of this Recommendation, "Plaintiff's Request for Planning and Scheduling Conference" (filed November 21, 2008) (doc. # 68) is DENIED at this time as premature.

2. "Plaintiff's Request for an Order" (filed September 30, 2008) (doc. # 59) is DENIED.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of

14

Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 22nd day of December, 2008.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge